UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRITTANIE N. WALLER,<br><br>    Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security,<br><br>    Defendant. | No. CV 17-5883 AGR<br><br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff filed this action on August 8, 2017. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge. (Dkt. Nos. 11, 13.) On March 26, 2018, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The court has taken the matter under submission without oral argument.

Having reviewed the entire file, the court reverses the decision of the Commissioner and remands for further proceedings consistent with this opinion.

# I.

## PROCEDURAL BACKGROUND

Plaintiff filed an application for supplemental security income and alleged an onset date of May 11, 2009. AR 25. The application was denied. AR 25, 68. Plaintiff requested a hearing before an ALJ. On November 16, 2015, the ALJ conducted a hearing at which Plaintiff and a vocational expert testified. AR 40-67. On February 11, 2016, the ALJ issued a decision denying benefits. AR 22-35. On June 7 and 21, 2017, the Appeals Council denied the request for review. AR 1-8. This action followed.

# II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

# III.

# DISCUSSION

## A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) (citation and quotation marks omitted).

## B. The ALJ's Findings

Following the five-step sequential analysis applicable to disability determinations, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[1] the ALJ found that Plaintiff had the severe impairments of headaches, fibromyalgia, chronic pain syndrome and obesity. AR 27. Plaintiff had the residual functional capacity ("RFC") to perform work at all exertional levels except that she is precluded from climbing ladders, ropes and scaffolds; working around unprotected heights or heavy machinery; and driving motorized/automotive vehicles. AR 29.

The ALJ found that Plaintiff was capable of performing her past relevant work as a waitress as generally performed. AR 33. Alternatively, there are jobs existing in the national economy that she could perform such as hospital cleaner, transporter, information clerk, office helper, addresser and telephone quotation clerk. AR 33-34.

---

[1] The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work. *Lounsburry*, 468 F.3d at 1114.

**C. <u>Step Two of the Sequential Analysis</u>**

At step two of the sequential analysis, the claimant bears the burden of demonstrating a severe, medically determinable impairment that meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). To satisfy the duration requirement, the severe impairment must have lasted or be expected to last for a continuous period of not less than 12 months. *Id.* at 140.

> Your impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms.

20 C.F.R. § 404.1508; 20 C.F.R. § 416.908. "[T]he impairment must be one that 'significantly limits your physical or mental ability to do basic work activities.'"[2] *Yuckert*, 482 U.S. at 154 n.11 (quoting 20 C.F.R. § 404.1520(c)); *Smolen*, 80 F.3d at 1290 ("[A]n impairment is not severe if it does not significantly limit [the claimant's] physical ability to do basic work activities.") (citation and quotation marks omitted).

"Step two is merely a threshold determination meant to screen out weak claims." *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017). "An impairment or combination of impairments may be found 'not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" *Webb v. Barnhart*, 433 F.3d 683, 686-87 (9th Cir. 2005) (emphasis in original, citation

---

[2] The ability to do basic work activities includes "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling," "[c]apacities for seeing, hearing, and speaking," "[u]nderstanding, carrying out, and remembering simple instructions," "[u]se of judgment," "[r]esponding appropriately to supervision, co-workers, and usual work situations," and "[d]ealing with changes in a routine work setting." *Yuckert*, 482 U.S. at 168 n.6 (citation and internal quotation marks omitted); *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

omitted). The ALJ's finding must be "clearly established by medical evidence." *Id.* at 687 (citations and internal quotation marks omitted). An error at step two is harmless when the ALJ considers the impairment at a later step in the sequential analysis. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (finding failure to list bursitis at step two was harmless absent error at later step); *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (finding error in failing to list obesity at step two was harmless unless claimant showed error at later step).

Plaintiff argues that the ALJ erred in not finding a mental impairment at step two of the sequential analysis. The ALJ concluded, based on the medical record, that the history of bipolar disorder, anxiety and mood disorder did not cause more than a minimal limitation in her ability to perform basic mental work activities. The ALJ found mild limitations in activities of daily living, social functioning, and concentration, persistence or pace, and no evidence of decompensation. AR 28-29. The ALJ therefore found the mental impairments to be nonsevere. 20 C.F.R. § 416.920a(d)(1).

The ALJ relied on three reasons for his conclusions at step two. Since filing the application for benefits, Plaintiff had not received mental health treatment other than anti-anxiety medication, and her medical records showed minimal mental findings. Plaintiff complained of pain and physical symptoms, rather than mental symptoms, as the reasons for restrictions on her functioning. AR 28. The ALJ gave little weight to Dr. Estes' mental disorder questionnaire form dated October 2010 because (1) it was mainly a recitation of Plaintiff's subjective complaints; (2) it pre-dated the filing date by three years; and (3) there was no evidence of mental health treatment with Dr. Estes since 2010. AR 29.

The ALJ's reasons are supported by substantial evidence. At the hearing, Plaintiff described herself as an honor student and testified that she stopped going to college because she barely passed her last semester due to "how much my physical ailments were just affecting my academic performance." AR 46-47. She wanted to get

5

a Ph.D., "and I couldn't do that." AR 59. Plaintiff did not ascribe her academic performance to mental limitations.

The ALJ's reasons for discounting Dr. Estes' opinion in October 2010 are supported by substantial evidence. Dr. Estes' responses to most questions were expressly based on Plaintiff's statements. The exceptions were Dr. Estes' observations that Plaintiff's appearance was within normal limits, she had no unusual mannerisms, she had gained significant weight over the past year, she had no history of psychiatric hospitalization, there was no evidence of perceptual disturbance, she did not display symptoms related to reality contact, and she had appropriate grooming. AR 215-17. As of October 2010, her prognosis was fair and she would likely require ongoing treatment to remain stable. AR 219. The ALJ was correct that there were no records from Dr. Estes since October 2010. Her opinion pre-dated Plaintiff's current application for benefits by three years.

The ALJ also noted Dr. Justice's records. AR 28. During a mental status examination in June 2012, Dr. Justice noted that Plaintiff was well groomed and made average eye contact but her speech was slurred. She had no delusions or hallucinations, and her thought process was logical. AR 240. Her Global Assessment of Functioning score was 75.[3] AR 241. In February 2013, Plaintiff reported that her mood has been "OK." AR 231. Dr. Justice discussed her need for a dual diagnosis program and referred her to a partial day program at St. Joseph's for evaluation.[4] AR

---

[3] A GAF of 75 indicates that symptoms are transient and expectable reactions to pyschosocial stressors, and that there is slight impairment in social, occupational or school functioning. American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 34 (4th ed. text rev. 2000) (DSM-IV-TR).

[4] Dr. Justice's notes dated September 2012 indicate she spoke to Dr. Estes about a substance abuse diagnosis and "drug seeking." According to Dr. Justice's notes, Dr. Estes had previously referred Plaintiff to UCLA's outpatient program. AR 235. Dr. Justice was concerned that Plaintiff was using a "potpourri of addictive meds" and medical marijuana due to fibromyalgia. AR 236.

231. Dr. Justice's referral note dated February 16, 2013 states that she would benefit from a dual diagnosis program and requests an assessment for appropriate treatment of a labile mood disorder and use of significant doses of medications. AR 233.

Plaintiff's medical records beginning October 2013 do not evidence further mental health treatment outside of pain management. Plaintiff reported using opiate medications without much relief and had a medical marijuana card. AR 250, 272. At St. Joseph's, she considered entering a detox program but requested to be weaned as an outpatient. AR 272. As the ALJ noted, the medical records after October 2013 contain a diagnosis of anxiety and minimal mental findings. AR 271 (noting alert and oriented), 279 (noting recent and remote memory intact; mood and affect normal), 287 (same), 332 (noting normal mood and affect), 373-74 (noting alert and oriented, mood and affect within normal limits), 565 (neurological evaluation noting intact recent and remote memory; appropriate judgment and affect; no evidence of thought disorder, delusions or hallucinations; normal concentration), 605 (noting mood and affect within normal limits), 614 (same), 618 (same), 622 (same), 646 (noting normal insight, judgment, mood, affect), 704 (noting intact recent and remote memory, and normal mood and affect). There was a period of time after Plaintiff was taken off opioids in 2015 that her mood and affect were flat. AR 608.

The ALJ noted that examining neurologist Dr. Maze opined in January 2014 that Plaintiff would function best "in a very low stress environment involving minimal contact with others." AR 31, 385. The ALJ rejected this limitation as unsupported. AR 31. The ALJ's reason is supported by substantial evidence. Dr. Maze's opinion on this subject was not contained in the section entitled functional limitations and is not supported by any mental health professional in the record.

Plaintiff also notes that Dr. Zepeda opined in May 2014 that her pain was severe enough to interfere with attention and concentration. AR 401. The ALJ rejected Dr. Zepeda's opinion because he failed to support his individual restrictions with specific objective medical findings and his medical records failed to support the severity of his

limitations. AR 32. The ALJ's reasons are supported by substantial evidence as to Plaintiff's attention and concentration. Plaintiff's mental health records do not contain findings of interference with concentration and attention, and Dr. Zepeda's records do not contain objective findings consistent with his opinion on that subject. *See* AR 565 (treating neurologist's examination noting Plaintiff's concentration is normal); *see also* AR 445 (notes indicating Dr. Zepeda considered sending Plaintiff for functional evaluation).

The ALJ did not err.

### D. Credibility

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. AR 32.

Second, when an ALJ concludes that a claimant is not malingering and has satisfied the first step, "the ALJ may 'reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (citation omitted); *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). "A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" *Brown-Hunter*, 806 F.3d at 493 (citation omitted). "'General findings are insufficient; rather, the ALJ must identify

what testimony is not credible and what evidence undermines the claimant's complaints.'" *Id.* (citation omitted).

The ALJ found that Plaintiff's statements about the intensity, persistence and limiting effects of her symptoms were not entirely credible. AR 33. The ALJ relied on three reasons: (1) absence of objective medical evidence to support the severity of her symptoms; (2) the weaning and removal of opioid medications; and (3) her poor earnings record. AR 31-32.

At step two, the ALJ found that Plaintiff had been diagnosed with fibromyalgia. AR 27. The Commissioner considers fibromyalgia under two sets of criteria. "Pursuant to the first set of criteria, a person suffers from fibromyalgia if: (1) she has widespread pain that has lasted at least three months (although the pain may 'fluctuate in intensity and may not always be present'); (2) she has tenderness in at least eleven of eighteen specified points on her body; and (3) there is evidence that other disorders are not accounting for the pain." *Revels v. Berryhill*, 874 F.3d 648, 656 (9th Cir. 2017) (citation omitted). "Pursuant to the second set of criteria, a person suffers from fibromyalgia if: (1) she has widespread pain that has lasted at least three months (although the pain may 'fluctuate in intensity and may not always be present'); (2) she has experienced repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, 'especially manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depressions, anxiety disorder, or irritable bowel syndrome'; and (3) there is evidence that other disorders are not accounting for the pain." *Id.* at 656-57 (citation omitted).

The ALJ's conclusion that the objective medical evidence did not support the severity of Plaintiff's symptoms is not supported by substantial evidence. "[T]he medical evidence must be construed in light of fibromyalgia's unique symptoms and diagnostic methods." *Revels*, 874 F.3d at 662. Plaintiff's treating physician, Dr. Zepeda, completed a physical residual functional capacity questionnaire in May 2014. AR 400-04. Dr. Zepeda stated that he saw Plaintiff on a monthly basis and noted multiple

tender points and diffuse body pain consistent with fibromyalgia.  AR 400.  She could sit, stand or walk less than two hours in an eight-hour workday.  AR 402.  She required a sit/stand/walk option and the ability to take unscheduled breaks every 1-2 hours.  AR 402-03.  She could occasionally lift 10 pounds and frequently lift less than 10 pounds.  She could grasp, turn or twist objects, and perform fine finger manipulations 50% of an eight-hour workday with each hand.  She could reach overhead less than 5% of an eight-hour workday.  AR 403.  She had good day and bad days, and he anticipated she would miss more than three days per month due to impairments or treatment.  AR 404.  Dr. Zepeda's medical records indicate Plaintiff had pain on palpation of the cervical facets with palpable trigger points in the head and neck muscles, and bilateral occipital protuberances.  Palpation of the thoracic and lumbar facets, lumbar intervertebral spaces and bilateral sacroiliac joints revealed pain.  There were palpable trigger points in the low back muscles and GTB.  AR 444, 448, 452.  Dr. Zepeda's opinion supports the severity of Plaintiff's symptoms.

The ALJ gave little weight to Dr. Zepeda's opinion because he "fail[ed] to support his individual restrictions with specific, detailed objective medical findings and the objective medical record fails to reflect the severity of findings and limitations consistent with his assessment."  AR 32.  The Ninth Circuit recently concluded that an ALJ erred in giving a treating physician's fibromyalgia opinion no weight based on the absence of objective medical findings.  "Fibromyalgia is diagnosed 'entirely on the basis of patients' reports of pain and other symptoms,' and 'there are no laboratory tests to confirm the diagnosis.'"  *Revels*, 874 F.3d at 663. The ALJ erred in discounting a claimant's credibility on this basis.  *Id.* at 666.

The ALJ acknowledged that a March 9, 2015 treatment note indicated Plaintiff was taken off opioids with resulting withdrawal symptoms, stress and pain.  AR 30, 608.  Subsequently, Dr. Khoshsar, at an initial consultation, noted multiple trigger points throughout the body.  AR 702; *see also* AR 703 (noting cervical spine was stiff with multiple trigger points), AR 699 (noting many trigger points throughout the body in June

2015). Given that the medical records continued to indicate trigger points and a diagnosis of fibromyalgia after Plaintiff was taken off opioids, these records do not constitute substantial evidence for the ALJ's conclusion that objective medical evidence did not support the severity of Plaintiff's symptoms.[5] *See Revels*, 874 F.3d 656-57 (noting that diagnosis of fibromyalgia takes into account evidence that other disorders are not accounting for the pain).

The ALJ observed that Dr. Khoshsar's initial consultation also noted psychosomatic disorder and suggested referral to a psychologist and psychiatrist. AR 705. In May 2015, Dr. Birla noted "multiple psychosomatic issues but [Plaintiff] has not been seeing any psychiatrist or psychologist due to insurance issues at this time." AR 642, 647. These appear to be the most recent treating notes in the administrative record shortly before the hearing in November 2015, and the ALJ acknowledged that there has not yet been a mental evaluation that has established a psychosomatic disorder. AR 32.

The ALJ also noted that Plaintiff's poor earnings record raised an inference of a lack of motivation to work. AR 32. This reason is supported by substantial evidence. *Thomas*, 278 F.3d at 959 (poor work history may negatively affect claimant's credibility). However, this single reason is not adequate to support the ALJ's ultimate credibility determination in light of his erroneous reliance on the other two reasons. *See Carmickle v. Comm'r*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

---

[5] Opioid dependence may constitute a basis to discount a *claimant's* credibility. Under the circumstances of this case, however, the fact that the claimant's treating physician weaned her off opioids does not undermine the medical source opinions as to fibromyalgia and its remaining functional restrictions.

## IV.

## **ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner is reversed and remanded for further proceedings consistent with this opinion.

DATED: May 7, 2018

ALICIA G. ROSENBERG
United States Magistrate Judge